UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

XL SPECIALTY INSURANCE COMPANY,

      Plaintiff,

v.

ROBERT J. FABBRICATORE, KATHERINE
D. COURAGE, HENRY HERMANN, KEVIN
NEE, KEVIN J. MARONI, J. RICHARD
MURPHY, ROBERT NICHOLSON, MARK E.
NUNNELLY, CARL REDFIELD, RICHARD
J. SANTAGATI, RALPH C. SILLARI, SCOTT
M. SPERLING, and RALPH S. TROUPE,

      Defendants.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

CIVIL ACTION
NO. 05-CV-10104 NMG

</td></tr>
</table>

## JOINT MOTION TO STAY PROCEEDINGS

All parties, by and through the undersigned counsel, hereby jointly move to stay these proceedings pending resolution of a pending Motion to Dismiss in a related matter. As grounds for this motion, the parties state as follows:

1.    On January 14, 2005, XL Specialty Insurance Company ("XL"), filed its Complaint for Declaratory Judgment ("Complaint") in this action.

2.    On January 18, 2005, XL filed its First Amended Complaint for Declaratory Judgment ("Amended Complaint"). In its Amended Complaint, XL seeks a declaratory judgment that there is no insurance coverage with respect to an adversary proceeding filed against the defendants and others in the United States Bankruptcy Court for the District of Delaware ("the Underlying Action"). The United States Bankruptcy Court for the District of Delaware has

ordered that the Underlying Action be transferred to the United States Bankruptcy Court for the District of Massachusetts. [1]

     3.     Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Katherine D. Courage, Henry Hermann, Kevin J. Maroni, J. Richard Murphy, Robert Nicholson, Mark E. Nunnelly, Richard J. Santagati, Ralph C. Sillari, Scott M. Sperling, and Ralph S. Troupe (the "Outside Director Defendants") filed a Motion to Dismiss the claims asserted against them in the Underlying Action. A copy of the Memorandum in Support of the Motion Dismiss is attached hereto as Exhibit A.

     4.     If the Motion to Dismiss is allowed, the Underlying Action will be dismissed with respect to the Outside Director Defendants. In the absence of the Underlying Action, the Outside Director Defendants would not seek Defense Costs or other coverage from XL in connection with that lawsuit. Accordingly, there would be no case or controversy between XL and these ten defendants.

     5.     Because the pending motion to dismiss may resolve this matter for the majority of defendants in this case, the parties agree that this matter will proceed most efficiently if it is stayed pending resolution of the Motion to Dismiss the Underlying Action or for 120 days, whichever is earlier.

*********************

WHEREFORE, the parties respectfully request that this Court enter the attached Order (attached hereto as Exhibit B), staying this matter and grant such further relief as the Court deems proper.

---

1. A Motion to Withdraw the Reference to the Bankruptcy Court, however, remains pending in the United States District Court for the District of Delaware. If that motion is granted, the case may remain in Delaware and proceed in the United States District Court for the District Delaware.

Dated: March 18, 2005

XL SPECIALTY INSURANCE
COMPANY,

By its counsel,

/s/ Deborah L. Thaxter
Deborah L. Thaxter (BBO# 495520)
Gregory P. Deschenes (BBO# 550830)
Nixon Peabody, LLP
101 Federal Street
Boston, MA 02110
(617) 345-1000

ROBERT J. FABBRICATORE and
KEVIN NEE

By their counsel,

/s/ Paul M. Glickman
Paul M. Glickman (BBO# 550840)
Glickman Turley, LLP
250 Summer Street
Boston, MA 02210
(617) 399-7770


ROBERT NICHOLSON,
KEVIN J. MARONI and
MARK NUNNELLY,

By their counsel,

/s/ Steven M. Cowley
Steven M. Cowley (BBO# 554534)
Edwards & Angell LLP
101 Federal Street
Boston, MA 02110-1800
(617) 951-2283


RICHARD J. SANTAGATI, J. RICHARD
MURPHY, HENRY HERMANN, RALPH C.
SILLARI AND RALPH S. TROUPE,

By their counsel,

/s/ T. Christopher Donnelly
T. Christopher Donnelly (BBO# 129930)
Matthew N. Kane (BBO# 636801)
Jill Brenner Meixel (BBO#652501)
Donnelly, Conroy & Gelhaar LLP
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 720-2880

SCOTT M. SPERLING AND
KATHERINE D. COURAGE,

By their counsel,

/s/ Diane Harvey
Diane Harvey
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

CARL REDFIELD,

By his counsel,

/s/ James Beha
James Beha
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
(212) 294-6842

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| CTC COMMUNICATIONS GROUP, INC., | ) | |
| CTC COMMUNICATIONS CORP., | ) | Case No. 02-12873 (PJW) |
| CTC COMMUNICATIONS OF VIRGINIA, | ) | |
| INC., AND CTC COMMUNICATIONS | ) | (Jointly Administered) |
| LEASING CORP. | ) | |
| | ) | |
|        Debtor. | ) | |
| | ) | |
| THE CTC LITIGATION TRUST, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| | ) | Adv. Pro. No. 04-55760 (PBL) |
| | ) | |
| | ) | |
| ROBERT J. FABBRICATORE, KATHERINE | ) | |
| D. COURAGE, HENRY HERMANN, KEVIN | ) | |
| NEE, KEVIN J. MARONI, J. RICHARD | ) | |
| MURPHY, ROBERT NICHOLSON, MARK E. | ) | |
| NUNNELLY, CARL REDFIELD, RICHARD | ) | |
| J. SANTAGATI, RALPH C. SILLARI, SCOTT | ) | |
| M. SPERLING, RALPH S. TROUPE, | ) | |
| JOHN F. POLMONARI, LEONARD R. | ) | |
| GLASS, ARLINGTON HOME & BUILDING | ) | |
| CO., UBS PAINE WEBBER RMA, | ) | |
| EPIPHANY VENTURES and COMM-TRACT | ) | |
| CORP., | ) | |
| | ) | |
|        Defendants. | ) | |

**CTC OUTSIDE DIRECTORS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS ALL
CLAIMS ASSERTED AGAINST THEM IN COMPLAINT**

Docket# 64

1-20-05

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

A.    The Parties ............................................................................................. 3

B.    The Alleged Wrongdoing ......................................................................... 3

ARGUMENT ......................................................................................................... 5

    I.    Plaintiff's Complaint Fails To State A Fiduciary Duty Claim
       Against CTC's Outside Directors ............................................................. 5

        A.    Plaintiff's Breach of Fiduciary Duty Claim in Count V
            Must Be Dismissed Under Del. Corp. Law § 102(b)(7) and
            the Language of CTC's Certificate of Incorporation ..................... 5

        B.    The Complaint Fails to State a Claim for Breach of
            Fiduciary Duty .............................................................................. 9

    II.    Plaintiff's Complaint Fails To Plead A Cognizable Claim For
        "Deepening Insolvency" Against The Outside Directors ......................... 12

CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases:**                                                                    Page(s)

Ash v. McCall, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000)......................................................5, 6

In re BHC Communications, Inc. S'holder Litig., 789 A.2d 1 (Del. Ch. 2001)........................6, 7,

In re Baxter Int'l, Inc. S'holders Litig., 654 A.2d 1268 (Del. Ch. 1995).........................................7

Bell Atl. Corp. v. Bolger, 2 F.3d 1304 (3d Cir. 1993)......................................................................5

In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996).......................... passim

Cede & Co. v. Technicolor, Inc., 634 A.2d 345 (Del. 1993)............................................................8

Coates v. Netro Corp., 2002 WL 31112340 (Del. Ch. Sept. 11, 2002) ...........................................5

Continuing Creditors' Comm. of Star Telecomm. Inc. v. Edgecomb, 2004 WL
   2980736 (D. Del. Dec. 21, 2004)..............................................................................................7, 8

Corporate Aviation Concepts, Inc., v. Multi-Service Aviation Corp., 2004 WL
   1900001 (E.D. Pa. Aug. 25, 2004)..........................................................................................13, 14

Emerald Partners v. Berlin, 787 A.2d 85 (Del. 2001).................................................................7, 8,

In re Exide Techs., Inc., 297 B.R. 732 (Bankr. D. Del. 2003)........................................................13

In re Global Servs. Group LLC, 316 B.R. 451 (S.D.N.Y. Bankr. 2004)........................................14

Green v. Phillips, 1996 WL 342093 (Del. Ch. June 19, 1996)........................................................9

Grobow v. Perot, 539 A.2d 180 (Del. 1988)....................................................................................3

In re Lukens Inc. S'holders Litig., 757 A.2d 720 (Del. Ch. 1999), aff'd, 2000 WL
   1152467 (Del. July 27, 2000) ......................................................................................................6

Malpiede v. Townson, 780 A.2d 1075 (Del. 2001) ...........................................................5, 7, 8, 9

Moran v. Household Int'l, Inc., 490 A.2d 1059 (Del. Ch.), aff'd, 500 A.2d 1346
   (Del. 1985).................................................................................................................................14

Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340 (3d
   Cir. 2001) ............................................................................................................................2, 13, 14

Orman v. Cullman, 794 A.2d 5 ( Del. Ch. 2002)...................................................................7

Prod. Res. Group, L.L.C. v. NCT Group, Inc., 2004 WL 2647593 (Del. Ch. Nov. 17, 2004) ........................................................................................................5, 8, 9, 11

Shapiro v. UJB Fin. Corp., 964 F.2d 272 (3d Cir.1992)..................................................14

In re Tri-Star Pictures, Inc., Litig., 634 A.2d 319 (Del. 1993) .........................................5

Unocal Corp. v. Mesa Petroleum Co., 493 A.2d 946 (Del. 1985) ....................................5

White v. Panic, 793 A.2d 356 (Del. Ch. 2000), aff'd, 783 A.2d 543 (Del. 2001) ........................11

**Statutes and Rules:**

Del. Corp. Law § 102(b)(7) ..................................................................................... passim

Del. Corp. Law § 174...............................................................................................6

Fed. R. Civ. P. 9(b) ................................................................................................14

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 5, 10

Fed. R. Bankr. P. 7009 ...........................................................................................14

Fed. R. Bankr. 7012(b) ............................................................................................5

Defendants Katherine D. Courage, Henry Hermann, Kevin J. Maroni, J. Richard Murphy, Robert Nicholson, Mark E. Nunnelly, Richard J. Santagati, Ralph C. Sillari, Scott M. Sperling, and Ralph S. Troupe (the "Outside Directors" or "Outside Director Defendants"[1]) respectfully submit this Memorandum of Law and the accompanying Affidavit of Denise Seastone Kraft in Support of Defendants' Motion to Dismiss the claims in plaintiff CTC Litigation Trust's Complaint ("Compl.") asserted against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In this adversary proceeding, the CTC Litigation Trust, as successor to and assignee of CTC Communication Group's ("CTC") bankruptcy estate, seeks to (i) prosecute a breach of fiduciary duty claim against CTC's Outside Directors for alleged failure to oversee the corporate affairs of CTC, and (ii) assert a claim labeled as "deepening insolvency" but which is just a repackaged version of plaintiff's claim for failure to oversee CTC. Neither of these claims can withstand a motion to dismiss.

First, plaintiff's oversight fiduciary duty claim against the Outside Directors is barred by CTC's certificate of incorporation. CTC's shareholders, acting pursuant to Section 102(b)(7) of the Delaware General Corporation Law, have adopted a certificate of incorporation provision eliminating director liability for all duty of care claims – the very claims plaintiff seeks to assert here. That is, CTC's certificate of incorporation provides that CTC's directors are immune from liability arising out of any purported due care violation, including claims which allege the failure to exercise due care in overseeing CTC's activities.

---

[1] Defendant Carl Redfield, a former director of CTC, has not joined in this Motion to Dismiss. We understand that he is currently retaining counsel.

1

Even if there were no absolute bar to plaintiff pursuing this oversight claim against the Outside Directors, plaintiff has failed to properly plead facts that, if true, would establish the elements of an oversight claim under In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996). Under Caremark, liability requires "a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists." Id. at 971. No such facts are pled in this case. Plaintiff's complaint pleads only in wholly conclusory fashion that the Outside Directors "were generally aware of [CTC's CEO] Fabbricatore's pervasive misuse of corporate assets." Compl. ¶ 66. But there is not a single particularized allegation describing what oversight should have been in place or what the Outside Director Defendants failed to do or what they actually knew or did not know regarding Mr. Fabbricatore's alleged wrongful conduct.

Second, plaintiff's purported additional theory of recovery, labeled as a deepening insolvency claim, also fails as a matter of law. Putting aside whether the Delaware Supreme Court would even recognize the existence of a deepening insolvency cause of action, courts that have done so require the pleading of a "fraudulent prolongation of a corporation's life beyond insolvency."[2] Here, plaintiff's complaint contains no allegations of fraud by any of the Outside Directors. Rather, plaintiff pleads that the Outside Directors were negligent in their oversight responsibilities. See Compl. ¶ 66. Plaintiff's allegations simply are not sufficient to state a deepening insolvency claim – even assuming that one exists. Rather, no matter how plaintiff seeks to label its purported claim for deepening insolvency, it amounts to nothing more than a claim for a breach of the duty of care which, as noted above, is expressly barred by CTC's certificate of incorporation.

---

[2] Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 350 (3d Cir. 2001).

2

The claims asserted against the Outside Directors in plaintiff's complaint (Counts V and VI therein) should therefore be dismissed with prejudice.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff, the CTC Litigation Trust, was created pursuant to CTC's Second Amended Joint Plan of Reorganization to own and administer certain claims belonging to CTC. Compl. ¶ 1. Plaintiff purports to be the lawful owner with respect to the causes of action alleged against the Outside Directors. Compl. ¶ 2.

Defendants Katherine D. Courage, Henry Hermann, Kevin J. Maroni, J. Richard Murphy, Robert Nicholson, Mark E. Nunnelly, Carl Redfield, Richard J. Santagati, Ralph C. Sillari, Scott M. Sperling and Ralph S. Troupe were at one time directors of CTC. Plaintiff does not allege that any of the above named defendants were insider, employee, or management directors. Absent a contrary allegation, Delaware law presumes that the directors are outside, non-employee, non-management directors. Grobow v. Perot, 539 A.2d 180, 184 n.1 (Del. 1988).

Defendant Robert J. Fabbricatore was CTC's Chairman and CEO from 1980 until September 16, 2002. Compl. ¶¶ 25, 75.

### B.    The Alleged Wrongdoing

Plaintiff alleges that Mr. Fabbricatore, as CTC's CEO, engaged in transactions, including one-sided deals with insider entities, margin loans to officers and misuse of CTC's corporate assets, which allegedly resulted in CTC suffering millions of dollars of losses. Compl. ¶ 82.

Plaintiff alleges in conclusory fashion (and upon information and belief without any factual predicate) that CTC's Outside Directors were "generally aware of Fabbricatore's

3

pervasive misuse of various corporate assets." Plaintiff alleges (again in conclusory fashion) in
Count V of the Complaint that the Outside Directors breached fiduciary duties owed to CTC by
"failing to investigate, review/or avail themselves of all material information reasonably
available to them" with respect to certain alleged wrongful transactions entered into by Mr.
Fabbricatore. Plaintiff alleges that the Outside Directors failed to properly investigate: (i)
CTC's engagement of Comm-Tract (a company allegedly affiliated with Mr. Fabbricatore) for
telecommunication services at prices that Plaintiff alleges were unreasonably high, (ii) CTC's
execution of a "highly unfavorable and unfair" realty lease with Telecom Realty Lease (a
company allegedly affiliated with Mr. Fabbricatore) which allegedly provided for CTC to pay for
build-out costs of a building to be occupied by CTC, and (iii) Mr. Fabbricatore's alleged use of
certain of CTC's corporate assets for his own personal benefit without reasonably equivalent
value for CTC. See Compl. ¶¶ 35-44, 53-59, 60-66, 102.

Thus, the complaint pleads that the Outside Directors failed to exercise proper
oversight over CTC's CEO and the transactions entered into between CTC and various third
parties alleged to be affiliated with Mr. Fabbricatore. Plaintiff does not plead in its complaint
that any of the Outside Directors benefited personally from any of the alleged improper
transactions purportedly engaged in by Mr. Fabbricatore with CTC.

Plaintiff also alleges (again in conclusory fashion) in Count VI of the Complaint
that as a result of Mr. Fabbricatore's alleged self-interested transactions with CTC that CTC
continued to operate for at least two years after it became insolvent. The complaint alleges no
particularized facts to establish that the Outside Directors knew or should have known that CTC
was insolvent prior to its filing for bankruptcy protection on Oct. 3, 2002.

4

### ARGUMENT[3]

I.  **Plaintiff's Complaint Fails To State A Fiduciary Duty Claim Against CTC's Outside Directors**

A.  **Plaintiff's Breach of Fiduciary Duty Claim in Count V Must Be Dismissed Under Del. Corp. Law § 102(b)(7) and the Language of CTC's Certificate of Incorporation**

In its complaint, plaintiff alleges that the Outside Directors breached their fiduciary duties by failing to act with requisite oversight in allowing CTC to engage in various alleged unfavorable transactions with entities allegedly affiliated with Mr. Fabbricatore. The complaint alleges claims for mismanagement and inadequate oversight. As a matter of law, such alleged claims must be characterized as "duty of care" violations. See Ash v. McCall, 2000 WL 1370341, at *5 (Del. Ch. Sept. 15, 2000) (the board's oversight duty is "a subset of the duty of care."); Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1316 (3d Cir. 1993) (characterizing a claim for mismanagement as "a breach of the fiduciary duty of care") (citing Unocal Corp. v. Mesa Petroleum Co., 493 A.2d 946, 954 (Del. 1985) (duty of care requires directors to keep themselves informed and to act with requisite care)).

Because plaintiff's claim amounts to an alleged duty of care violation, it must be dismissed pursuant to Section 102(b)(7) of the Delaware General Corporation Law and CTC's

---

[3] When deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable to bankruptcy cases pursuant to Bankruptcy Rule 7012(b), the court "is required to assume as true the well-pleaded allegations in the complaint." Malpiede v. Townson, 780 A.2d 1075, 1082 (Del. 2001). "In this context, 'well-pleaded allegations' include specific allegations of fact and conclusions supported by specific allegations of fact." Id. at 1083 n.16. "[C]onclusory allegations [will] not [be] accepted as true without specific factual allegations to support them.'" Prod. Res. Group, L.L.C. v. NCT Group, Inc., 2004 WL 2647593, at *7 (Del. Ch. Nov. 17, 2004) (quoting In re Tri-Star Pictures, Inc., Litig., 634 A.2d 319, 326 (Del. 1993)). "[T]he trial court is not required to accept every strained interpretation of the allegations proposed by the plaintiff." Malpiede, 780 A.2d at 1082. Accordingly, "mere conclusory statement[s] that the defendants breached their fiduciary duties is not enough to survive a motion to dismiss." Coates v. Netro Corp., 2002 WL 31112340, at *5 (Del. Ch. Sept. 11, 2002).

certificate of incorporation. CTC's shareholders, acting pursuant to Section 102(b)(7), have

adopted a certificate of incorporation provision eliminating director liability for duty of care

claims. As such, Count V of plaintiffs' complaint must be dismissed.

Section 102(b)(7), adopted in 1986, permits shareholders to adopt certificate of

incorporation provisions "eliminating or limiting the personal liability of a director to the

corporation or its stockholders for monetary damages for breach of fiduciary duty as a director,"

with the exception of liability (i) for breach of the director's "duty of loyalty to the corporation

or its stockholders," (ii) for acts or omissions "not in good faith" or that involve "intentional

misconduct or a knowing violation of law," (iii) under Del. Corp. Law § 174, which prohibits

unlawful payments of dividends and unlawful stock purchases and redemptions, and (iv) for "any

transaction from which the director derived an improper personal benefit."

"The function of the § 102(b)(7) Provision is to render duty of care claims not

cognizable and to preclude plaintiffs from pressing claims of breach of fiduciary duty, absent the

most basic factual showing (or reasonable basis to infer) that the directors' conduct was the

product of bad faith, disloyalty or one of the other exceptions listed in the statute." In re Lukens

Inc. S'holders Litig., 757 A.2d 720, 734 (Del. Ch. 1999) (granting motion to dismiss), aff'd,

2000 WL 1152467 (Del. July 27, 2000) (affirming "on the basis of and for the reasons assigned

by the Court of Chancery in its well-reasoned opinion"); In re BHC Communications, Inc.

S'holder Litig., 789 A.2d 1, 9-10 (Del. Ch. 2001) (dismissing claims that "allege only a breach of

the duty of care and fall within the protection of the Section 102(b)(7) charter provisions" and

rejecting an "attempt to elaborate on these claims" with "additional allegations" that "are

insufficient to raise any challenge to the independence or disinterestedness"); Ash, 2000 WL

1370341, at *8, *10 n.31 (stating that plaintiffs' claims that "directors missed several 'red flags'

that should have alerted them to the accounting problems" fail to allege adequately bad faith or

disloyalty and thus "must be dismissed because of the § 102(b)(7) provision").[4]  Here, plaintiff's

complaint <u>only</u> asserts a due care claim against the Outside Directors.

Acting pursuant to Section 102(b)(7), CTC's certificate of incorporation provides

CTC's directors the full protection allowed by Section 102(b)(7).  This certificate provision (<u>see</u>

Exhibits B and D attached to the Affidavit of Denise Seastone Kraft in Support of Defendants'

Motion to Dismiss), of which this Court can take judicial notice[5], provides as follows:

> No director shall be liable to the corporation or any of its stockholders for
> monetary damages for breach of fiduciary duty as a director, except with respect
> to (1) a breach of the director's duty of loyalty to the corporation or its
> stockholders, (2) acts or omissions not in good faith or which involve intentional
> misconduct or a knowing violation of law, (3) liability under Section 174 of the
> Delaware General Corporation Law or (4) a transaction from which the director
> derived any improper personal benefit, it being the intention of the foregoing
> provision to eliminate the liability of the corporation's directors to the corporation
> or its stockholders to the fullest extent permitted by Section 102 (b)(7) of the
> Delaware General Corporation Law, as amended from time to time.  The
> corporation shall indemnify to the fullest extent permitted by Sections 102(b)(7)
> and 145 of the Delaware General Corporation Law, as amended from time to
> time, each person that such Sections grant the corporation the power to indemnify.

"[I]f a shareholder complaint unambiguously asserts <u>only</u> a due care claim [– as it

does here –], the complaint is dismissible once the corporation's Section 102(b)(7) provision is

properly invoked."  <u>Emerald Partners</u>, 787 A.2d at 91; <u>see also</u> <u>Continuing Creditors' Comm. of</u>

---

[4] <u>Malpiede</u> and <u>Emerald Partners</u> make clear that a Section 102(b)(7) provision may be invoked on a Rule 12(b)(6) motion to dismiss. See <u>Malpiede</u>, 780 A.2d at 1092, <u>quoted in</u> <u>Emerald Partners</u> v. <u>Berlin</u>, 787 A.2d 85, 91 n.35 (Del. 2001); <u>Orman</u> v. <u>Cullman</u>, 794 A.2d 5, 39-40 (Del. Ch. 2002).

[5] <u>See</u> <u>Malpiede</u> v. <u>Townson</u>, 780 A.2d 1075, 1090 & n.47 (Del. 2001) (court may take judicial notice of documents such as 102(b)(7) charter provisions that "could easily be found in the public files in the Secretary of State's office"); <u>In re BHC Communications, Inc. S'holder Litig.</u>, 789 A.2d 1, 9-10 (Del. Ch. 2001) (same); <u>In re Baxter Int'l. Inc. S'holders Litig.</u>, 654 A.2d 1268, 1270 (Del. Ch. 1995) (same).

Star Telecomm. Inc., v. Edgecomb, 2004 WL 2980736 (D. Del. Dec. 21, 2004) (dismissing

breach of fiduciary duty claims on the ground that suit for breach of duty of care violations are

expressly barred by § 102(b)(7) exculpatory provision); Malpiede, 780 A.2d at 1094 ("if there is

only an unambiguous, residual due care claim and nothing else – as a matter of law – then

Section 102(b)(7) would bar the claim"). Significantly, plaintiff's complaint does not accuse the

Outside Directors of breaching their duty of loyalty, i.e., acting in a manner other than in good

faith and in the honest belief that the action taken is in the corporation's best interest. See Cede

& Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993). Plaintiff's complaint also fails to

allege self-dealing, stealing, fraud, intentional misconduct, conflict of interest, or usurpation of

corporate opportunities by defendant directors. See Emerald Partners, 787 A.2d at 90 (If a

defendant does not breach his duty of loyalty, he is permitted to rely on the business judgment

rule or an exculpatory provision, if applicable, to shield him from liability for a breach of the

duty of care).

Furthermore, Section 102(b)(7) extends protection to directors of insolvent

corporations. Production Resources Group L.L.C. v. NCT Group Inc., 2004 WL 2647593 (Del.

Ch. Nov. 17, 2004). In Production Resources, the directors of debtor NCT Group, Inc. ("NCT")

were alleged to have breached their duty of care to Production Resources Group. L.L.C.

("PRG"). In so claiming, PRG argued that once a company becomes insolvent, directors may no

longer look to the protections of the exculpatory charter clause to insulate them from suits

brought by creditor for duty of care violations. Id. at *3. After reviewing the purpose behind

Section 102(b)(7) exculpatory clauses, the Delaware Chancery Court found that "[t]o expose

directors to liability for breach of the duty of care for . . . claims of mismanagement . . . guts this

8

purpose by denying the directors the protection of § 102(b)(7) when they arguably need it most."
Id.

Accordingly, for the reasons set forth above, the complaint fails to establish conduct falling within one of the exceptions to the Section 102(b)(7) exculpatory clause and the proffered damages claims for alleged due care violation are barred. See Malpiede, 780 A.2d at 1094 (concluding that the well-pleaded allegations of the complaint failed to establish loyalty or bad faith claims, and that any residual due care claims were barred by the exculpatory provision and the complaint properly was dismissed); Green v. Phillips, 1996 WL 342093, at *6-7 (Del. Ch. June 19, 1996) (claims against directors dismissed on 12(b)(6) motion where there were no well-pleaded allegations supporting contention that directors were interested or otherwise acted in other than good faith in approving a consulting and non-compete agreement, and where any residual duty of loyalty claims would be barred by Section 102(b)(7) exculpatory provision contained in certificate of incorporation).

## B.    The Complaint Fails to State a Claim for Breach of Fiduciary Duty

Putting aside that plaintiff is precluded by CTC's certificate of incorporation from pursuing a breach of the duty of care claim against the Outside Directors, and assuming that plaintiff could somehow bring such a claim, plaintiff's complaint fails to state a claim for breach of fiduciary duty.

The leading case governing the pleading of due care claims of this type is In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996). In Caremark, the court noted that proving liability for failure to monitor corporate affairs is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Id. at 967.

Caremark involved a shareholder derivative action alleging that the directors of Caremark International, Inc. breached their fiduciary duty of care to the company in connection with alleged violations by Caremark employees of federal and state laws and regulations governing health care providers. These violations led to a guilty plea by Caremark to felony mail fraud and civil and criminal fines and reimbursements by the company totaling approximately $250 million. Id. at 960-61. In the context of a motion for court approval of a settlement that provided the corporation consideration that did "not impress" the court "as very significant," the court held that this "not . . . very significant" consideration was "fully adequate" to support a "fair and reasonable" settlement because the claims asserted in the case "find no substantial evidentiary support in the record and quite likely were susceptible to a motion to dismiss." Id. at 970-71 (emphasis added).

The court stated the governing rule as follows: "[W]here a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation, . . . only a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists – will establish the lack of good faith that is a necessary condition to liability." Id. at 971. The court emphasized that this "test of liability – lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight" is "quite high" and "demanding." Id.

Applying this "quite high" and "demanding" standard, the court concluded that "the record supplies essentially no evidence that the director defendants were guilty of a sustained failure to exercise their oversight function." Id. To the contrary, the court stated, "insofar as I am able to tell on this record, the corporation's information systems appear to have represented a good faith attempt to be informed of relevant facts" and "[i]f the directors did not

10

know the specifics of the activities that lead to the indictments, they cannot be faulted." Id. at

971-72. The court stated that "[t]he record at this stage does not support the conclusion that the

defendants either lacked good faith in the exercise of their monitoring responsibilities or

conscientiously permitted a known violation of law by the corporation to occur" and thus "[t]he

claims asserted against them must be viewed at this stage as extremely weak." Id. at 972. The

court added that the fact that "[t]he liability that eventuated in this instance was huge . . . does

not create a breach of fiduciary duty by directors." Id.; see also White v. Panic, 793 A.2d 356,

371 (Del. Ch. 2000) (stating that "under the standard discussed in Caremark" a plaintiff must

allege "facts showing a 'lack of good faith as evidenced by sustained or systematic failure . . . to

exercise reasonable oversight'" and concluding that the complaint in the White case, "accepted

as true, has not satisfied the high standard enunciated in Caremark"), aff'd on other grounds, 783

A.2d 543, 551-52 (Del. 2001) (noting that "the plaintiff has elected not to pursue such a claim").

  In the context of a due care claim for mismanagement and inadequate oversight,

the court in Production Resources recently concluded that the plaintiff must plead facts

supporting an inference of subjective bad faith. Prod. Res., 2004 WL 2647593, at *18 n.81

(citing In re Caremark, 698 A.2d at 968 n.16).

  Here, plaintiffs' complaint allege no facts that, if true, would overcome the "quite

high" and "demanding" test of liability and no facts supporting subjective bad faith of the

Outside Directors. There are no allegations of fact that, if true, would show "a sustained or

systematic failure" by CTC's Outside Directors "to exercise oversight – such as an utter failure

to attempt to assure a reasonable information and reporting system exists" – over CTC's affairs.

In re Caremark, 698 A.2d at 971. Nothing in plaintiffs' complaint offers any factual showing

that CTC's Outside Directors "kn[e]w the specifics" of the alleged misconduct being perpetrated

11

on CTC by Fabbricatore.  Id.  Nor is there anything in plaintiffs' complaint offering any factual

basis for an inference that CTC's Outside Directors "either lacked good faith in the exercise of

their monitoring responsibilities or conscientiously permitted a known violation of law by the

corporation to occur."  Id. at 972.[6]  Accordingly, plaintiff has failed to plead a claim for breach

of fiduciary duty against the Outside Directors.

## II.    Plaintiff's Complaint Fails To Plead A Cognizable Claim For "Deepening Insolvency" Against The Outside Directors

In Count VI of its complaint, plaintiff alleges on information and belief – but no

facts – that the Outside Directors and Mr. Fabbricatore continued CTC's business for "at least

two years after . . . it became insolvent."  Compl. ¶ 106.  It further alleges (again with no factual

particularity), that "CTC suffered injury from extended life, dissipation of assets and increased

insolvency."  Compl. ¶ 107.  Putting aside whether the Delaware Supreme Court would

---

[6] The allegations in the complaint speak in terms of mismanagement and inadequate oversight and are entirely conclusory in nature.  See

- Compl. ¶ 102(a) ("by failing to investigate, review and/or avail themselves of all material information reasonably available to them with respect to CTC's engagement of Comm-Tract and, thus, permitting Fabbricatore to retain Comm-Tract at his sole discretion, without any genuine competitive bidding process" resulting in CTC overpaying for services);
- Compl. ¶ 102(b) ("by failing to investigate, review and/or avail themselves of all material information reasonably available to them with respect to CTC's engagement of Comm-Tract and, thus, permitting CTC" to overpay millions of dollars for services traditionally done internally by telecommunications company's);
- Compl. ¶ 102(c) ("by failing to investigate, review and/or avail themselves of all material information reasonably available to them with respect to Telecom Realty Lease and the Build-out transfers" they permitting CTC to enter in an unfavorable and unfair lease – resulting in significant losses); and
- Compl. ¶ 102(d) ("by failing to investigate, review and/or avail themselves of all material information reasonably available to them with respect to Fabbricatore's use of CTC Corporate assets" without receiving reasonably equivalent value in return.).

12

recognize a separate claim of deepening insolvency,[7] plaintiff simply has not pled the elements of such a claim.

A deepening insolvency claim is a tort consisting of "an injury to the Debtor's corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life." In re Exide Techs., Inc., 299 B.R. 732, 751 n.11 (Bankr. D. Del. 2003) (quoting Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 347 (3d Cir. 2001) (bankruptcy of two lease financing corporations who allegedly operated as a Ponzi scheme)) (emphasis added). Courts that have recognized deepening insolvency have required fraud as an element in order to successfully plead such a claim. Under this theory, courts, including the Third Circuit, have recognized that "fraudulent and concealed incurrence of debt can damage" the value of an insolvent company. R.F. Lafferty, 267 F.3d at 349 (emphasis added).

Merely alleging an accumulation of debt is not enough to support a claim of deepening insolvency. For example, the court in Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp., 2004 WL 1900001, at *4 (E.D. Pa. Aug. 25, 2004), recognized that "the tort requires a showing of 'fraudulent expansion of corporate debt and prolongation of corporate life.'" Id. (quoting R.F. Lafferty, 267 F.3d at 347) (emphasis added). Since the court could find no fraudulent acts leading to the accumulation of debt, the court dismissed the claim with prejudice. Id.

---

[7] Defendants are only aware of one Delaware court that has recognized a claim for deepening insolvency. The court in In re Exide Technologies, Inc., found that deepening insolvency can be brought as an independent cause of action under Delaware law. 299 B.R. 732, 752 (Bankr. D. Del. 2003). Although the court held that an alleged fraudulent accumulation of debt and intentional delays in filing for bankruptcy protection by controlling lenders of corporate debtor was enough to defeat a motion to dismiss, the court came to this conclusion based on the specific facts of that case, including the alleged fraud. As set forth above, plaintiff has not made any allegations of fraud against the Outside Directors in connection with its deepening insolvency claim here.

Here, plaintiff does not plead – as it must – that the Outside Directors fraudulently expanded CTC's corporate debt. There are no allegations of fraud alleged against the Outside Directors in plaintiff's complaint. Nor does plaintiff even plead that CTC was forced to incur more corporate debt as a result of any of the alleged improper transactions engaged in by Mr. Fabbricatore.[8]

Accordingly, plaintiff's mere conclusory allegation that defendants prolonged an insolvent corporation does not state a claim – even assuming one exists under Delaware law – for deepening insolvency. See In re Global Serv. Group LLC, 316 B.R. 451 (Bankr. S.D.N.Y. 2004) (defendant's prolonging an insolvent corporation's life, without more, will not result in liability under a "deepening insolvency" theory of recovery); Corporate Aviation Concepts, 2004 WL 1900001 (deepening insolvency claim failed as a matter of law because the plaintiff failed to allege that any party expanded the debtors' debt in any way or that the accumulation of debt was fraudulent); R.F. Lafferty, 267 F.3d 340 (deepening insolvency claim arose out of claim that third parties had fraudulently induced the corporations to issue debt securities, thereby deepening their insolvency and forcing them into bankruptcy).

Rather, plaintiff's purported deepening insolvency claim is merely a dressed-up breach of the duty of care cause of action. See Moran v. Household Int'l, Inc., 490 A.2d 1059, 1069-70 (Del.Ch.), aff'd, 500 A.2d 1346 (Del. 1985) ("[T]he Court is not bound by the designation employed by the Plaintiff. Rather, the nature of the action is determined from the

---

[8] If plaintiff had plead that the Outside Directors committed fraud, they would have had to plead such allegations consistent the stringent pleading requirements required under Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9(b), applicable to bankruptcy cases pursuant to Bankruptcy Rule 7009, a plaintiff alleging fraud must plead: "(1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir.1992).

14

body of the complaint.") (citation omitted).  Accordingly, any such purported claim – even if it

could be considered one for deepening insolvency – is barred by CTC's certificate of

incorporation and Section 102(b)(7) of the Delaware General Corporation Law.

### CONCLUSION

For all of these reasons, the Outside Director Defendants respectfully request that

this Court dismiss the claims in the complaints against them (Counts V and VI) in their entirety

with prejudice.

Dated:  January 20, 2005          EDWARDS & ANGELL LLP
Wilmington, Delaware

Stuart M. Brown (No. 4050)
Denise Seastone Kraft (No. 2778)
Mark D. Olivere (No. 4291)
919 N. Market Street, 14th Floor
Wilmington, DE 19801
(302) 777-7770
(302) 777-7263 Facsimile
sbrown@edwardsangell.com
dkraft@edwardsangell.com
molivere@edwardsangell.com

Filed on behalf of Outside Director Defendants Henry
Hermann, Kevin J. Maroni, J. Richard Murphy, Robert
Nicholson, Richard J. Santagati, Ralph C. Sillari, Ralph S.
Troup, Scott M. Sperling, Katherine D. Courage and Mark
E. Nunnelly

15

John D. Hughes
Steven M. Cowley
EDWARDS & ANGELL LLP
101 Federal Street
Boston, MA 02110-1800
(617) 951-2283
jhughes@edwardsangell.com
scowley@edwardsangell.com

Attorneys for Robert Nicholson
and Kevin J. Maroni


John D. Donovan, Jr.
Erin T. Fontana
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000
(617) 951-7050 Facsimile
jdonovan@ropesgray.com

Attorney for Mark E. Nunnelly


T. Christopher Donnelly
DONNELLY, CONROY & GELHAAR, LLP
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 720-2880
(617) 720-3554 Facsimile
tcd@dcglaw.com

Attorney for Richard J. Santagati, J. Richard Murphy,
Henry Hermann, Ralph C. Sillari and Ralph S. Troupe

Diane Harvey
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
(212) 310-8007 Facsimile
diane.harvey@weil.com

-and-

16

James L. Messenger
100 Federal Street
Boston, MA 02110
(617) 772-8329
(617) 772-8333 Facsimile
james.messsenger@weil.com

Attorneys for Scott M. Sperling and
Katherine D. Courage

17

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>ROBERT J. FABBRICATORE, KATHERINE )<br>D. COURAGE, HENRY HERMANN, KEVIN )<br>NEE, KEVIN J. MARONI, J. RICHARD )<br>MURPHY, ROBERT NICHOLSON, MARK E. )<br>NUNNELLY, CARL REDFIELD, RICHARD )<br>J. SANTAGATI, RALPH C. SILLARI, SCOTT )<br>M. SPERLING, and RALPH S. TROUPE,  )<br><br>Defendants.  ) | CIVIL ACTION<br>NO. 05-CV-10104 NMG |

## ORDER

The parties' Joint Motion to Stay Proceedings is hereby ***ALLOWED***. This matter will

therefore be stayed: (i) pending resolution of the pending Motion to Dismiss the adversary

proceeding filed against the defendants and others in the United States Bankruptcy Court for the

District of Delaware ("the Underlying Action"); or (ii) for a period of 120 days from entry of this

Order, whichever is earlier. This stay will be automatically lifted upon notice to this Court of a

decision on the pending motion to dismiss or after 120 days, whichever is earlier. The Defendants

shall file responsive pleadings or the parties shall file a stipulation of dismissal, as appropriate,

within twenty (20) days of the expiration of this stay.

Date: _____          _____
                                   Hon. Nathaniel M. Gorton
                                   United States District Court Judge